[Cite as *Donnell v. Parkcliffe Alzheimer's Community*, 2017-Ohio-7982.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Noel Donnell, as Personal Representative
of the Estate of Helen Donnell, Deceased

Court of Appeals No. WD-17-001

Appellant

Trial Court No.  16 CV 219

v.

Parkcliffe Alzheimer's Community, et al.

**DECISION AND JUDGMENT**

Appellees

Decided: September 29, 2017

* * * * *

Blake A. Dickson, for appellant.

Rudolph A. Peckinpaugh, Jr. and Mark W. Sandretto, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** This is an appeal from the judgment of the Wood County Court of Common

Pleas, granting appellees', Parkcliffe, Inc., Parkcliffe Development LLC, and its

unincorporated trade names Parkcliffe Alzheimer's Community and Parkcliffe

Community Northwood, motion to compel arbitration. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} The undisputed facts for purposes of this appeal are as follows. On April 14, 2016, appellant, Noel Donnell, as the Personal Representative of the Estate of Helen Donnell, Deceased, filed a complaint against appellees, asserting survivorship claims and wrongful death claims. In the complaint, appellant alleged that Mrs. Donnell was a resident of appellees when she suffered injuries, including a hip fracture. Appellant alleged that the injuries were caused by appellees' negligence. Mrs. Donnell died on November 19, 2015.

{¶ 3} On June 16, 2016, appellees filed an answer denying the allegations, and asserting as an affirmative defense that the claims are subject to mandatory alternative dispute resolution, including binding arbitration if necessary. Appellees attached to the answer a copy of an "Amendment to the Admission Agreement," which provides,

> The resident and Parkcliffe agree to attempt to resolve informally
> through mediation all disputes between them, including those that arise
> under this Agreement and any other claims of any kind or type whatsoever
> that Resident makes against Parkcliffe (all such disputes and claims are
> referred to in this Agreement as "Claims".) To the fullest extent permitted
> by applicable law, any Claim that cannot be resolved informally by

2.

mediation within sixty days from the date of initiation of the mediation shall be determined by binding arbitration conducted in Lucas County, Ohio by the American Arbitration Association or by any method of private arbitration upon which the Resident and Parkcliffe agree; provided, however, that any such private arbitration shall proceed in accordance with the procedural rules of the American Arbitration Association then in effect (the "Rules").

**{¶ 4}** Thereafter, the parties engaged in some discovery. Appellees served their first set of interrogatories, request for production of documents, and requests for admissions. Appellees also responded to appellant's first and second sets of interrogatories, requests for admissions, and request for production of documents.

**{¶ 5}** On July 19, 2016, the trial court held a scheduling pretrial. The court established deadlines for discovery, and scheduled a settlement pretrial for January 31, 2017, and a trial for March 28, 2017.

**{¶ 6}** On August 10, 2016, appellees moved to compel arbitration on the Estate of Helen Donnell's survivorship claims, and to stay the proceedings, including appellant's wrongful death claim, pending the conclusion of arbitration. Attached to the motion was a "Durable General and Health Care Power of Attorney," in which Mrs. Donnell named appellant as her lawful agent. Notably, the power of attorney was executed in 1992, and the health care powers expired after seven years. Also attached to the motion was the

3.

"Admission Agreement" and "Amendment to the Admission Agreement." The "Admission Agreement" was signed by appellant under the "Resident's Sponsor" line, but the "Amendment to the Admission Agreement" contained appellant's signature under the "Resident" line. On October 25, 2016, appellant filed his brief in opposition to the motion to compel arbitration. A reply brief and a sur-reply brief were also filed.

{¶ 7} On December 6, 2016, the trial court granted appellees' motion to compel arbitration, and stayed all of the actions in the case pending the results of arbitration.

## II. Assignments of Error

{¶ 8} Appellant has timely appealed the trial court's December 6, 2016 judgment entry, and asserts six assignments of error for our review:

I. None of the appellees are parties to the arbitration clause.

II. The arbitration clause is not enforceable against Helen Donnell because it was never signed by Helen Donnell nor by anyone with authority to sign on her behalf.

III. Appellees waived their right to arbitration.

IV. The trial court erred in finding that Ohio Revised Code § 2711.22 through § 2711.24 were not applicable. The arbitration clause in this case is void under Ohio law.

V. The arbitration clause in this case is both procedurally and substantively unconscionable and therefore unenforceable.

4.

VI. The trial court erred in staying the wrongful death claims pending the resolution of arbitration.

### III. Analysis

{¶ 9} This appeal concerns whether the arbitration clause is enforceable. "Arbitration agreements are 'valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 32. "[I]n reviewing whether an arbitration clause is enforceable, we apply a de novo standard of review." *Norman v. Schumacher Homes of Circleville, Inc.*, 2013-Ohio-2687, 994 N.E.2d 865, ¶ 11 (4th Dist.).

### A. Parties to the Arbitration Clause

{¶ 10} In his first and second assignments of error, appellant argues that the arbitration clause is unenforceable because it was not signed by the parties.

{¶ 11} Specifically, in his first assignment of error, appellant argues that the arbitration clause was signed on behalf of "Parkcliffe Community," which is not a legal entity or registered trade name.

{¶ 12} R.C. 1329.01(A)(2) provides that "a name used in business or trade that is fictitious and that the user has not registered or is not entitled to register as a trade name" is a "fictitious name." "Corporations in Ohio have the right to adopt fictitious names 'so long as it is not done with fraudulent purpose or against public policy.'" *Green Tree*

5.

*Servicing LLC v. Luce*, 11th Dist. Ashtabula No. 2015-A-0022, 2016-Ohio-1011, ¶ 21, quoting *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 15; *see also Plain Dealer Publishing Co. v. Worrell*, 178 Ohio App.3d 485, 2008-Ohio-4846, 898 N.E.2d 1009, ¶ 16 (9th Dist.), quoting *Baldwin's Ohio Practice Business Organizations*, Section 17:9 ("A corporation may use a name other than its corporate name in the conduct of its business."). "[A]n action may be commenced or maintained against the user of a fictitious name whether or not the name has been reported." *Plain Dealer Publishing* at ¶ 16. Here, appellant does not identify, and we cannot find, anything in the record that would support a conclusion that the fictitious name was adopted with fraudulent purpose or against public policy. Therefore, we hold that appellees' use of a fictitious name does not render the arbitration provision unenforceable as between the parties to the litigation.

{¶ 13} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 14} In his second assignment of error, appellant argues that the arbitration provision is unenforceable because it was not signed by Mrs. Donnell or anyone authorized to sign on her behalf. In particular, appellant argues that the power of attorney that was granted to him by Mrs. Donnell had expired. Section B of the power of attorney provides that appellant is authorized to make health care decisions on behalf of Mrs. Donnell. Subsection 3 of Section B states,

6.

This durable power of attorney for health care shall expire seven years after the date of its execution, or such later time as may be permitted by law (this power of attorney for health care shall continue even after seven years, if allowed by law, until terminated by the undersigned or by applicable law) unless at such expiration date I lack the capacity to make health care decisions for myself, in which case this durable power of attorney for health care shall continue in effect until the time when I regain the capacity to make health care decisions for myself.

Because the power of attorney was executed in 1992, appellant argues that it expired in 1999, and thus he did not have authority to bind Mrs. Donnell to the arbitration agreement.

{¶ 15} In opposition, appellees do not contest that the health care power of attorney expired after seven years. Instead, they argue that as an adult group home licensed under R.C. Chapter 5119, they only provided Mrs. Donnell with living quarters, meals, and assistance with activities of daily living, such as walking, moving, bathing, grooming, toileting, oral hygiene, hair care, dressing, eating, and nail care. Appellees stress that Mrs. Donnell did not reside in a nursing home, nor did they provide health care or nursing care to Mrs. Donnell, or any other type of procedure requiring informed consent. Thus, they contend that appellant's authority to sign on behalf of Mrs. Donnell did not arise under the health care powers, but instead was founded in the "Other Powers"

7.

enumerated in section C of the power of attorney. Subsection 12 of section C provides that appellant shall have the authority to "prepare, draw, make, sign, execute, seal, acknowledge, verify, * * * on my behalf, any and all * * * contracts, * * * agreements, * * * and any other papers, documents, or writings or things."

{¶ 16} We agree with appellees that appellant was not exercising authority under the health care powers when he signed the "Admission Agreement" and the "Amendment to the Admission Agreement." The "Admission Agreement" clearly states that "Parkcliffe, by law, cannot provide skilled nursing care. However, if the resident develops a medical condition that requires skilled nursing care on a periodic, scheduled basis for no more than 120 days, the resident may contract with a Home Health agency or a Hospice organization." Further, the "Admission Agreement" provides that

> Parkcliffe provides medication storage, reminders to take, assistance opening containers, helping to prevent spilling and assistance with ordering of medication from Swanton Pharmacy. Medication management should not be confused with medication administration that is performed by a nurse and based on a doctor's specific order. We will make a good faith effort to prompt residents, but cannot ensure that all medication will be taken. Any skilled nursing care cannot be provided by Parkcliffe staff and must be performed by a family member or a third-party agency.

8.

Thus, because appellees were not providing health care or nursing care to Mrs. Donnell, appellant was exercising his powers under the general powers conferred in section C of the power of attorney when he signed the "Amendment to the Admission Agreement." Those powers were not subject to an expiration date. Furthermore, the power of attorney provides in section H that "If any power or authority hereby sought to be conferred upon my attorney should be invalid or unexercisable (sic) for any use or not recognized by any person or organization dealing with my attorney, the remaining powers and authorities given to my attorney hereunder shall nevertheless continue in full force and effect." Therefore, the general powers conferred by the power of attorney were not affected by the expiration of the powers under the health care provision. As a result, we hold that appellant was acting within the authority conferred upon him by Mrs. Donnell when he entered into the "Amendment to the Admission Agreement" containing the arbitration provision.

{¶ 17} Alternatively, appellant argues that the arbitration provision is unenforceable because appellant signed the agreement using only his name, and not as "Helen M. Donnell, by Noel A. Donnell, Attorney-in-Fact" as provided in the power of attorney. Further, appellant signed his name on the "Resident" line, and not on the "Sponsor" line.

9.

{¶ 18} However, the power of attorney provides that in addition to signing as "Helen M. Donnell, by Noel A. Donnell, Attorney-In-Fact," the attorney may sign "in any other legally effective manner." Here, the "Amendment to the Admission Agreement" is expressly between Parkcliffe Community and Mrs. Donnell:

> The undersigned resident Helen Donnell and Parkcliffe Community hereby agree to amend the Admission Agreement entered into between them on the date of 8/26/14, by inserting the attached new dispute resolution provision at the end of the Agreement and incorporating that provision in the Agreement.

Although appellant signed only his name, he had actual authority to bind Mrs. Donnell to the agreement, and his signature was legal to do so. Therefore, we hold that the arbitration provision is not unenforceable based on appellant's signature.

{¶ 19} Accordingly, appellant's second assignment of error is not well-taken.

## B. Waiver

{¶ 20} In his third assignment of error, appellant argues that appellees waived their right to enforce the arbitration clause. "Like any other contractual right, * * * the right to arbitrate may be implicitly waived." *Travelers Cas. & Sur. Co. v. Aeroquip-Vickers, Inc.*, 6th Dist. Lucas No. L-06-1201, 2007-Ohio-5305, ¶ 34. "Whether the contractual right to arbitration has been waived is a mixed question of both factual issues and the weight to be given those facts under the applicable legal standard." *Buyer v.*

10.

*Long*, 6th Dist. Fulton No. F-05-012, 2006-Ohio-472, ¶ 7.  "[A]lthough questions of law may be reviewed de novo, the trial court's ultimate determination of whether the right to demand arbitration has been waived will be reviewed under an abuse of discretion standard."  *Id.*

{¶ 21} "Waiver may attach where there is active participation in a lawsuit demonstrating an acquiescence to proceeding in a judicial forum."  *Id.* at ¶ 13.  "A party asserting waiver must establish that (1) the waiving party knew of the existing right to arbitrate; and (2) the totality of the circumstances demonstrate the party acted inconsistently with the known right."  *Id.* at ¶ 11, citing *Atkinson v. Dick Masheter Leasing II, Inc.*, 10th Dist. Franklin No. 01AP-1016, 2002-Ohio-4299, ¶ 20.  When considering the totality of the circumstances, the court may be guided by:

> [W]hether the party seeking arbitration invoked the jurisdiction of the court by filing a complaint, counterclaim, or third-party complaint without asking for a stay of the proceedings; (2) the delay, if any, by the party seeking arbitration to request a stay of the judicial proceedings, or an order compelling arbitration; (3) the extent to which the party seeking arbitration has participated in the litigation, including a determination of the status of discovery, dispositive motions, and the trial date; and (4) whether the nonmoving party would be prejudiced by the moving party's prior inconsistent actions.  *Id.* at ¶ 12.

11.

"[A] waiver of the right to arbitrate is not to be lightly inferred." *Id.* at ¶ 13, citing *Griffith v. Linton*, 130 Ohio App.3d 746, 751, 721 N.E.2d 146 (10th Dist.1998).

{¶ 22} Appellant argues that appellees waived the right to arbitrate the dispute because they filed an answer with a jury demand, and participated in the litigation by propounding and responding to discovery requests, filing and responding to motions, and engaging in a status conference with the trial court.

{¶ 23} Appellees, on the other hand, argue that they raised the issue of arbitration as an affirmative defense in their answer, and filed the motion to compel within four months of filing their answer. Further, although they participated in limited discovery, appellees note that there were additional claims for wrongful death, which were not subject to the arbitration agreement. Appellees also argue that limited discovery was consistent with the rights they have under the arbitration process. Finally, appellees argue that appellant has not demonstrated any prejudice since the trial date was still seven months away at the time the motion to compel was filed, and there is nothing to demonstrate that appellees' actions caused the loss of any evidence or duplication of efforts.

{¶ 24} In its decision, the trial court concluded:

On balance, the totality of the circumstances does not demonstrate that Parkcliffe's actions were inconsistent with its right to arbitrate Mr. Donnell's claims against it. Parkcliffe did not invoke the court's

12.

jurisdiction by filing any type of claim against Mr. Donnell, Parkcliffe's four-month delay in filing its motion to stay was not unreasonable and was not done at a time that would disrupt a scheduled trial or avoid the consequences of a dispositive motion, its participation in the litigation to this point was not substantively different than its participation would have been if the case had gone directly to arbitration, and Mr. Donnell has not shown any prejudice due to Parkcliffe's actions to this point.

We agree, and hold that the trial court did not abuse its discretion when it found that appellees had not waived their right to arbitration. *See, e.g., Milling Away, LLC v. Infinity Retail Environments, Inc.*, 9th Dist. Summit No. 24168, 2008-Ohio-4691, ¶ 14 (no waiver where motion for a stay was filed six months after the complaint, the parties exchanged motions regarding the proceedings, minimal discovery had occurred, and the trial court had not yet set a trial date).

{¶ 25} Accordingly, appellant's third assignment of error is not well-taken.

### C. Void under R.C. 2711.23

{¶ 26} In his fourth assignment of error, appellant argues that the arbitration agreement is void because it fails to satisfy any of the conditions of R.C. 2711.23. R.C. 2711.23 governs "arbitration agreements pursuant to sections 2711.01 and 2711.22 of the Revised Code for controversies involving a medical, dental, chiropractic, or optometric claim that is entered into prior to a patient receiving any care, diagnosis, or treatment." It

13.

sets forth ten requirements that must be met for those arbitration agreements to be valid and enforceable.

{¶ 27} However, as identified by appellees, and recognized by the trial court, R.C. 2711.23 applies to contracts "between a patient and a hospital or healthcare provider." R.C. 2711.22. "Hospital" is defined as "any person, corporation, association, board, or authority that is responsible for the operation of any hospital licensed or registered in the state." R.C. 2711.22(B)(2) and 2305.113(E)(1). "Healthcare provider" is defined as "a physician, podiatrist, dentist, licensed practical nurse, registered nurse, advanced practice registered nurse, chiropractor, optometrist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, emergency medical technician-paramedic, or physical therapist." R.C. 2711.22(B)(1). Here, appellees are not licensed or registered as a hospital, but instead are licensed as an adult group home under R.C. Chapter 5119. Further, appellant has not alleged or provided any evidence that any of appellees' employees are health care providers. Therefore, the requirements of R.C. 2711.23 do not apply to the arbitration agreement between the parties.

{¶ 28} Accordingly, appellant's fourth assignment of error is not well-taken.

### D. Unconscionability

{¶ 29} In his fifth assignment of error, appellant argues that the arbitration agreement is unenforceable because it is unconscionable. We review the trial court's

contrary determination that the arbitration agreement is not unconscionable de novo. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 21.

{¶ 30} "Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (Internal quotes omitted.) *Id.* at ¶ 20. "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Id.*

### 1. Procedural Unconscionability

{¶ 31} "Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' 'age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 43, quoting *Collins v. Click Camera & Video*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993).

Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive

substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors. *Id.*, quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d. "When a trial court makes factual findings * * * supporting its determination that a contract is or is not unconscionable, such as any findings regarding the circumstances surrounding the making of the contract, those factual findings should be reviewed with great deference." *Id.* at ¶ 37.

{¶ 32} Here, the trial court found that appellant was an elderly man, but that the evidence did not indicate his level of education, intelligence, business acumen, or experience. The court also found that while appellant had recently been released from the hospital and was experiencing stress and anxiety about placing Mrs. Donnell into appellees' facility, two of appellant's adult children were with him at the time he signed the "Amendment to the Admission Agreement," and at least one of the children had communicated extensively with appellees' Program Director of Health and Wellness prior to Mrs. Donnell's admission. Further, the trial court found that appellees drafted the agreement, but the care manager who signed on behalf of appellees could not correctly and satisfactorily explain the impact of the arbitration clause. As to the ability to make alterations to the terms, the care manager stated that previous residents had

16.

altered the admission agreement, but not the arbitration provision. She did testify in her deposition, however, that signing the "Amendment to the Admission Agreement" was not a condition of acceptance into the facility, and she was aware of other residents who had been admitted without signing the amendment. Finally, the trial court found that there was no evidence that appellees anticipated that Mrs. Donnell would fail to perform her duties under the agreement, nor was there any evidence that Mrs. Donnell would not receive substantial benefits because of the agreement.

{¶ 33} In his brief, appellant argues that the present situation is similar to two cases where the court held that the arbitration provision in a nursing care facility admission agreement was procedurally unconscionable. In *Small v. HCF of Perrysburg, Inc.*, 159 Ohio App.3d 66, 2004-Ohio-5757, 823 N.E.2d 19 (6th Dist.), the wife signed the agreement on behalf of her husband. At the time, the wife was concerned for her husband's health because he appeared to be unconscious, and the wife was approached and asked to sign the admission agreement shortly after she learned that her husband was going to be transported to the hospital. The agreement was not explained to her, she did not have an attorney present, she did not have any particularized legal expertise, and she was 69 years old when the agreement was signed. The wife testified that she was under considerable stress when she signed the agreement, and that the whole process, from their arrival at the facility until the ambulance left, took approximately 30 minutes. We held

17.

that under these circumstances, the arbitration agreement was procedurally unconscionable. *Id.* at ¶ 27-30.

{¶ 34} Likewise, in *Manley v. Personacare of Ohio*, 11th Dist. Lake No. 2005-L-174, 2007-Ohio-343, ¶ 30, the court held that the arbitration agreement was procedurally unconscionable where, "[the resident] was 66 years old, entering a nursing home directly from a hospital, without an attorney, friend, or family member to assist her in the process. She had fears due to a recent assault, had no legal expertise, had numerous physical problems, had a mild cognitive impairment, and had bouts of confusion."

{¶ 35} We find the present situation to be distinguishable. Unlike the signers in *Small* and *Manley*, there is no evidence in the record that appellant had any cognitive impairment or confusion, or that he was under a great deal of stress precipitated by Mrs. Donnell needing to be rushed to the hospital. Further, appellant was not alone when he signed the agreement, but was joined by his two adult children, and there is no indication that the admission procedure was rushed or truncated. Finally, there was testimony from the care manager that the arbitration provision was not presented as a condition of admission, and that she was aware of other residents who did not sign the arbitration provision. While it is concerning that the care manager was not able to accurately describe the consequences of arbitration, we hold that under the totality of the circumstances of this case, the arbitration provision is not procedurally unconscionable.

18.

## 2. Substantive Unconscionability

{¶ 36} "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 33. "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Id.* "No bright-line set of factors for determining substantive unconscionability has been adopted by this court." *Id.*

{¶ 37} We hold that the arbitration provision is not substantively unconscionable in this case. The arbitration provision does purport to waive the parties' right to trial by jury, but as recognized by the Ohio Supreme Court, "waiver of the right to trial by jury is a necessary consequence of agreeing to have an arbitrator decide a dispute, and this aspect of an arbitration clause is not substantively unconscionable." *Id.* at ¶ 34. In addition, the arbitration agreement does not speak to or provide for a shifting of attorney fees or costs of arbitration, and it allows for discovery. Finally, we note that arbitration is triggered only when informal mediation is unsuccessful, and that the parties can agree to any private arbitration provided that the procedural rules of the American Arbitration Association are used. Therefore, we do not find that the terms of the agreement are so one-sided or unfair as to render the arbitration provision substantively unconscionable.

19.

**{¶ 38}** Accordingly, because appellant has failed to demonstrate that the arbitration provision is both procedurally and substantively unconscionable, his fifth assignment of error is not well-taken.

### E. Wrongful Death Claims

**{¶ 39}** In his sixth assignment of error, appellant argues that the wrongful death claims of the beneficiaries of Mrs. Donnell's estate should not be stayed pending arbitration. Notably, the parties do not dispute that the wrongful death claims are separate from the survival claims, and are not subject to the arbitration agreement.

**{¶ 40}** R.C. 2711.02(B) provides,

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

"[W]hen an action involves both arbitrable and non-arbitrable claims, the entire proceeding must be stayed until the issues that are subject to arbitration are resolved." *Hussein v. Hafner & Shugarman Ents.*, 176 Ohio App.3d 127, 2008-Ohio-1791, 890

20.

N.E.2d 356, ¶ 47 (6th Dist.), quoting *Cheney v. Sears, Roebuck & Co.*, 10th Dist. Franklin No. 04AP-1354, 2005-Ohio-3283, ¶ 12. Therefore, we hold that the trial court did not err when it stayed the entire proceedings pending the results of arbitration.

{¶ 41} Accordingly, appellant's sixth assignment of error is not well-taken.

### F. Additional Authority

{¶ 42} As a final matter, we will address several motions filed by the parties after their appellate briefs had been submitted. On July 12, 2017, one week before oral arguments were held on this matter, appellees moved for leave to file additional authority pursuant to App.R. 21(I), which provides, "If counsel on oral argument intends to present authorities not cited in the brief, counsel shall, at least five days prior to oral argument, present in writing such authorities to the court and to opposing counsel, unless there is good cause for a later presentment." Appellant did not object to this motion. Thus, upon due consideration, appellees' motion to file additional authority is granted.

{¶ 43} After oral arguments, on September 7, 2017, appellees filed a second motion for leave to file additional authority. Appellant opposed this second motion, and alternatively filed a motion for leave to file a response to the authority. The additional authority cited by appellees is *Kindred Nursing Ctrs. Ltd. Partnership v. Clark*, Slip Opinion No. 16-32, 137 S.Ct. 1421, 197 L.Ed.2d 806 (May 15, 2017), in which the United States Supreme Court overturned the decision of the Kentucky Supreme Court that held that a power of attorney must specifically entitle the agent to enter into an

21.

arbitration agreement on behalf of the principal for the arbitration provision to be enforceable when signed by the agent. Here, however, appellant does not argue that the power of attorney must specifically state that he has the authority to enter into an arbitration agreement. Thus, the additional authority is not applicable. Therefore, upon due consideration, appellees' second motion to file additional authority is hereby denied, and appellant's motion for leave to file a response is denied as moot.

### IV. Conclusion

{¶ 44} For the foregoing reasons we find that substantial justice has been done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.     

_____
               JUDGE

Arlene Singer, J.         

_____

Thomas J. Osowik, J.     
CONCUR.
               JUDGE

_____
               JUDGE

22.